UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY DUNBAR,

          Petitioner,

   vs.

RONALD RACKLEY,

          Respondent.

No.  2:15-cv-0205-KJM-EFB P

<u>FINDINGS AND RECOMMENDATIONS</u>

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him after his plea of guilty on December 28, 2012, in the Shasta County Superior Court, on charges of corporal injury to a cohabitant or spouse with the infliction of great bodily injury. He seeks federal habeas relief on the grounds that the trial court violated his federal constitutional rights in denying his motion to withdraw his guilty plea, and his trial and appellate counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

/////

/////

/////

/////

1

1   **I. Background**

2           In its unpublished memorandum and opinion affirming petitioner's judgment of

3   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

4   following factual summary:

5           Defendant Anthony Lamar Dunbar pleaded no contest to spousal
            abuse and admitted he inflicted great bodily injury on the victim.
6           Prior to sentencing, defendant made a *Marsden*[1] motion and sought
            to withdraw his plea.  The trial court denied the motion to substitute
7           counsel and defendant appeals this ruling.  We affirm.

8           **BACKGROUND**[2]

9           Defendant and his girlfriend, April Wilson, had been living together
            for about a year.  One morning they were arguing and defendant hit
10          Wilson, grabbed her by the throat and began to strangle her.
            Defendant threatened to kill her.  Wilson lapsed into
11          unconsciousness.  When she revived, defendant told her she had
            had a seizure.  Wilson sustained damage to her voice box, was
12          unable to eat solid food for almost three weeks and suffered
            temporary hearing loss.
13

14          An information charged defendant with attempted premeditated
            murder (Pen. Code, §§ 664, 187, subd. (a)),[3] battery with serious
15          bodily injury (§ 243, subd. (d)), spousal abuse (§ 273.5, subd. (a)),
            false imprisonment by force (§§ 236, 237) and two counts of
16          dissuading a witness by force (§ 136.1, subd. (c)(1)).  As to the
            spousal abuse charge, the information also alleged that defendant
            inflicted great bodily injury on the victim (§ 12022.7, subd. (e)).
17

18          Defendant pleaded no contest to spousal abuse and admitted the
            allegation he inflicted great bodily injury on the victim, in exchange
19          for a stipulated term of seven years in state prison.  The parties also
            agreed the remaining counts would be dismissed.  At the sentencing
20          hearing, defendant indicated he wanted to withdraw his plea.
            Counsel did not believe there was a basis for withdrawing the plea,
21          absent a finding of ineffective assistance of counsel.  Accordingly,
            the court held a *Marsden* hearing.

22          Defendant claimed counsel was ineffective and he should be
            allowed to withdraw his plea as: (1) he was unaware he was
23          pleading to a strike; (2) he thought he would be serving less time
            than the agreed term; and, (3) he did not inflict great bodily injury
24          on the victim, rather she had a seizure which caused her injuries.

25          [1]   *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

26          [2]   The substantive facts underlying defendant's conviction are not relevant to any issue
27   raised on appeal and are therefore not recounted in detail.

28          [3]   Undesignated statutory references are to the Penal Code.

Defendant also said he had not understood the great bodily injury enhancement and would not have admitted it if he had understood it, because the victim's seizure disorder caused her injuries not his beating. Defendant acknowledged at the time he entered the plea, he knew Wilson had a seizure condition and had discussed her condition with his attorney. He also told his attorney "several times that I don't think that the [great bodily injury] should be part of my deal because I did not cause her to have this condition that she has already and it's in her history." Defendant understood if he was convicted of every offense he had been charged with, he was facing a potential life sentence as opposed to the seven-year stipulated sentence.

In response to defendant's claims, counsel replied she had explained the charges to defendant, as well as his possible prison exposure and the consequences of sustaining a strike conviction, including the potential of increased sentences in the future. They discussed the amount of actual time he would serve on his sentence. Counsel provided a "very rough estimate" that on a seven-year sentence with the credits defendant had, there were approximately five years remaining on his sentence. Counsel stated she and defendant had discussed that Wilson's injuries could have been caused by a seizure rather than defendant's abuse. Counsel also discussed with defendant the possibility that the fight had induced the seizure which could constitute great bodily injury. In addition, they discussed what could happen at a trial "with regard to if [Wilson's] injuries were the result of a seizure versus whether they were directly inflicted by him and/or indirectly inflicted if the seizure was the result of the fight that they had, talked about self-defense, mutual altercations." Counsel acknowledged defendant had been struggling with the plea, and although he was not "thrilled with the result," she was confident he fully understood the plea.

The court found defendant had filled out a plea form expressly indicating he understood he was pleading to a strike, and would have limited credits as a result of the strike. The court also found defendant had "some buyer's remorse with regard to a plea that, in my view - and in preparing for your sentencing hearing . . . the DA gave you an exceptionally lenient offer. My suspicion is - and I tried many, many cases for 17 years in the criminal system - is that you would have gone down for a lot more than seven years and to get seven years in negotiation was an exceptional job whether you like it or not." Accordingly, the court denied the motion to relieve counsel and sentenced defendant in accordance with the plea. The trial court granted defendant's motion for a certificate of probable cause.

*People v. Dunbar*, No. C073055, 2013 WL 4833855, at *1-2 (Cal.App.3rd Dist. Sept. 11, 2013).

After the California Court of Appeal affirmed his judgment of conviction, petitioner filed a petition for writ of habeas in the California Supreme Court. Resp't's Lodg. Doc. 8. Therein, he claimed that: (1) the trial court's denial of his motion to withdraw his guilty plea was "an abuse of

discretion and the procedures used had a substantial an[d] injurious effect or influence or was otherwise fundamentally unfair;" (2) his trial counsel rendered ineffective assistance in failing to "properly inform him of the consequences of his plea and to assist him withdraw his plea when he objected;" and (3) his appellate counsel rendered ineffective assistance in failing to raise appellate claims concerning the alleged ineffective assistance of trial counsel and the denial of his motion to withdraw his guilty plea.  *Id.*  The petition for writ of habeas corpus was summarily denied. Resp't's Lodg. Doc. 9.  Petitioner did not file a petition for review.

Petitioner filed his federal habeas petition in this court on January 26, 2015.  Respondent filed an answer on July 6, 2015, and petitioner filed a traverse on December 28, 2015.  ECF Nos. 1, 14, 18.

## II.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

1   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

2   *Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

3   what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

4   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

5   precedent may not be "used to refine or sharpen a general principle of Supreme Court

6   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

7   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

8   (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

9   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

10   be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of

11   an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

12   *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

13        A state court decision is "contrary to" clearly established federal law if it applies a rule

14   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

15   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

16   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

17   writ if the state court identifies the correct governing legal principle from the Supreme Court's

18   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4] *Lockyer v.*

19   *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

20   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

21   court concludes in its independent judgment that the relevant state-court decision applied clearly

22   established federal law erroneously or incorrectly.  Rather, that application must also be

23   unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

24   (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

25   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

26   _____

27        [4]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

2    'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

3    *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

4    Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

5    must show that the state court's ruling on the claim being presented in federal court was so

6    lacking in justification that there was an error well understood and comprehended in existing law

7    beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

8        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

9    court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

10   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

11   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

12   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

13   considering de novo the constitutional issues raised.").

14       The court looks to the last reasoned state court decision as the basis for the state court

15   judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

16   the last reasoned state court decision adopts or substantially incorporates the reasoning from a

17   previous state court decision, this court may consider both decisions to ascertain the reasoning of

18   the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

19   a federal claim has been presented to a state court and the state court has denied relief, it may be

20   presumed that the state court adjudicated the claim on the merits in the absence of any indication

21   or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99.  This presumption

22   may be overcome by a showing "there is reason to think some other explanation for the state

23   court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

24   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

25   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

26   the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133

27   S.Ct. 1088, 1091 (2013).

28   /////

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### III.  Petitioner's Claims

#### A.  Motion to Withdraw Guilty Plea

In petitioner's first ground for relief, he claims that the trial court's denial of his motion to withdraw his guilty plea was "an abuse of discretion and the procedures used had a substantial an[d] injurious effect or influence or was otherwise fundamentally unfair."  ECF No. 1 at 4.

/////

7

Petitioner argues that "three separate grounds" warranted granting his motion to withdraw: (1) at the time he entered his plea he was "unaware of the impact of a strike conviction in the future;" (2) he "had been advised he would be doing less time based upon his plea than that which he later calculated under the realization that he was to receive only 15% goodtime credits;" and (3) he believed he had a viable defense that the victim's injuries were the result of her seizure disorder, and not his own actions, but his trial counsel failed to investigate that issue.[5] *Id.* Respondent counters that petitioner is not entitled to relief on this claim because he never made a formal motion to withdraw his plea and his grounds for setting aside the plea are refuted by the record. ECF No. 14 at 17.

### 1. State Court Decision

The California Court of Appeal denied petitioner's claim regarding the withdrawal of his guilty plea, reasoning as follows:

> Defendant contends the trial court should have granted his motion to withdraw his plea or appointed separate counsel to file a formal motion on his behalf. He claims his assertion that Wilson's injuries were the result of a seizure rather than his abuse "should have caused sufficient concern to the court to consider appointment of separate counsel. Counsel could review whether this potential defense had merit and if it should be discussed with an expert witness before [defendant] entered his pleas."
>
> As a procedural point, defendant did not make a motion to withdraw the plea. Counsel specifically stated she did not believe there were grounds to make a motion to withdraw the plea. The trial court then held a *Marsden* hearing to determine whether substitute counsel should be appointed to make a motion to withdraw the plea on the grounds of ineffective assistance of counsel. (*People v. Smith* (1993) 6 Cal.4th 684, 696 (*Smith*).) The trial court denied this motion. Accordingly, we review only defendant's claim that the trial court should have granted his *Marsden* motion and appointed substitute counsel.
>
> Where a defendant seeks to withdraw a guilty plea on the basis of ineffective assistance of counsel, the court is obligated to explore the reasons underlying the request and, if "the defendant makes a 'colorable claim' of inadequacy of counsel, then the trial court may, in its discretion, appoint new counsel to assist the defendant in moving [to withdraw his plea]. [Citations]" (*People v. Diaz* (1992) 3 Cal.4th 495, 574.) However, the trial court should appoint

---

[5] In the petition and traverse, petitioner refers to several exhibits. However, the court has not been able to locate any exhibits and they have apparently not been filed with the court.

substitute counsel only when "the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." (*Smith, supra*, 6 Cal.4th at p. 696.) "'Denial of the motion [for substitution of appointed counsel] is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.' [Citation.]" (*Id.* at p. 701; quoting *People v. Webster* (1991) 54 Cal.3d 411, 435.)

There is no error here. The trial court allowed defendant to fully state his complaints and inquired into them. Defense counsel responded to each point. Defendant acknowledged he knew Wilson had a seizure disorder prior to entering his plea. In addition, prior to the plea, counsel and defendant discussed the issue of Wilson's seizure disorder and its potential impact on the case if they went to trial and in fact spent a "great deal of time" specifically discussing this point. Contrary to his claims now on appeal, at the trial court, defendant did not complain about counsel's investigation of the seizure disorder. The record shows no significant conflict between defendant and counsel, nor does it show inadequate representation.

Moreover to show an abuse of discretion in denying the *Marsden* motion, defendant would have to show the failure to replace counsel substantially impaired his right to effective assistance of counsel. In this case, that would mean he would have to show he would have succeeded on a motion to withdraw the plea. He would not have.

Under section 1018, at any time before judgment, a court may grant a defendant's motion to withdraw his plea for good cause. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415–1416 (*Breslin*).) "To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1207–1208.) The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake. (*In re Moser* (1993) 6 Cal.4th 342, 352.)" (*Id.* at p. 1416.)

Defendant claims he established good cause to withdraw his plea by articulating a possible defense to the great bodily injury allegation, and that since "[t]he record does not disclose to what extent, if any, his claim had been investigated by counsel or whether his claim was medically credible . . . the possibility [of this defense] . . . was sufficient cause . . . to withdraw his plea." It was not. Defendant was not operating under any mistake, ignorance, or other factor overcoming his free judgment in entering the plea. He does not even allege he was. Defendant was aware of the victim's seizure disorder when he entered the plea. He and counsel extensively

9

1
2
3
4
5
6
7

    discussed the issue of Wilson's seizures and the possibility of utilizing the seizures as a defense.  To the extent there was a lack of investigation about the medical viability that Wilson's seizures could have caused her injuries, it appears both defendant and counsel proceeded under the presumption the defense was medically viable.  Defendant does not allege any new facts which have come to light since he entered the plea.  Rather, this appears to simply be, as the trial court concluded, a case of buyer's remorse.  A defendant is not permitted to withdraw his plea because he has changed his mind.  Since there was no good cause, defendant would not have succeeded on a motion to withdraw the plea and the failure to replace counsel did not substantially impair his right to effective assistance of counsel.  There was no error here.

8

*Dunbar*, 2013 WL 4833855, at *2-3.

9

### 2. <u>Analysis and Applicable Law</u>

10
11
12
13
14

    As explained by the California Court of Appeal, petitioner's trial counsel did not file a motion to withdraw petitioner's guilty plea because she did not believe there were grounds for such a motion.  After holding a *Marsden* hearing, the trial court also determined there were no grounds to appoint substitute counsel to file a motion to set aside the plea, thereby essentially foreclosing petitioner's ability to set aside his plea.[6]

15
16
17
18
19
20
21

    Even assuming *arguendo* that petitioner made a valid motion in the trial court to withdraw his plea, the trial court's denial of that motion did not violate petitioner's federal constitutional rights.  It is clearly established federal law that a guilty plea must be knowing, intelligent and voluntary.  *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  The record must reflect that a criminal defendant pleading guilty understands, and is voluntarily waiving, his rights to the privilege against compulsory self-incrimination, to trial by jury and to confront one's accusers.  *Boykin*, 395 U.S. at 243.  However, "beyond these essentials,

22
23
24
25
26
27
28

------

    [6]   More specifically, subsequent to the change of plea proceedings petitioner told his trial counsel he wanted to "withdraw his plea."  Resp't's Lodg. Doc. 3 at 8.  Counsel in turn informed the trial court that petitioner was "essentially requesting a *Marsden* hearing at this point."  *Id.* at 7.  The judge cleared the courtroom and counsel explained that petitioner wanted to withdraw his plea but she did not believe there was a "basis for that absent the Court finding that there had been ineffective assistance, which is essentially the *Marsden* hearing process."  *Id.* at 8.  The court told petitioner that if he found trial counsel had rendered ineffective assistance, "then certainly I can get another attorney to look into it.  And if I don't find that, then I won't."  *Id.*  The *Marsden* hearing then proceeded, with the trial court finding no grounds to appoint substitute counsel.

the Constitution 'does not impose strict requirements on the mechanics of plea proceedings.'"

*Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012) (quoting *United States v. Escamilla-Rojas*,

640 F.3d 1055, 1062 (9th Cir. 2011), *cert. denied*, ___ U.S. ___, 133 S.Ct. 101 (2012)).  *See also*

*Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974) (specific articulation of the *Boykin* rights

"is not the sine qua non of a valid guilty plea.").  Rather, if the record demonstrates that a guilty

plea is knowing and voluntary, "no particular ritual or showing on the record is required."  *United*

*States v. McWilliams*, 730 F.2d 1218, 1223 (9th Cir. 1984).  The long-standing test for

determining the validity of a guilty plea is "'whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant.'"  *Parke v.*

*Raley*, 506 U.S. 20, 29 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  "The

voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the

relevant circumstances surrounding it."  *Brady*, 397 F.2d at 749.

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the Supreme Court addressed the

presumption of verity to be given the record of plea proceedings when the plea is subsequently

subject to a collateral challenge.  While noting that the defendant's representations at the time of

his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his

plea, the court stated that, nonetheless, the defendant's representations, as well as any findings

made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral

proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."

*Blackledge*, 431 U.S. at 74.  A guilty plea is presumed valid in habeas proceeding when the

pleading defendant was represented by counsel.  *Marshall v. Lonberger*, 459 U.S. 422, 437

(1983).

"[I]t is the policy of the law to hold litigants to their assurances" at a plea colloquy.

*United States v. Marrero–Rivera*, 124 F.3d 342, 349 (1st Cir. 1997) (citations, internal quotation

marks, and alteration omitted).  A petitioner "should not be heard to controvert his Rule 11

statements in a subsequent § 2255 motion unless he offers a valid reason why he should be

permitted to depart from the apparent truth of his earlier statement[s]."  *United States v. Butt*, 731

F.2d 75, 80 (1st Cir. 1984) (quoting *Crawford v. United States*, 519 F.2d 347 (4th Cir.1975)).

1   "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a

2   Rule 11 colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221 (4th

3   Cir. 2005) (quoting *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003.))

4       The state court record in this case includes petitioner's signed "Waiver of Constitutional

5   Rights; Advisement of Consequences."  Resp't's Lodg. Doc. 1, Clerk's Transcript on Appeal

6   (hereinafter CT), at 67-71.  That document states that petitioner is pleading no contest to one

7   count of spousal abuse and is admitting a sentence enhancement for infliction of great bodily

8   injury, pursuant to Cal. Penal Code § 12022.7(e).  *Id.* at 67.  The waiver form further states that

9   petitioner will be sentenced to 7 years in state prison.  *Id.*  Petitioner acknowledged that his

10  conviction could be used in the future as a "prior prison sentence," which in turn could be used to

11  increase a future state prison sentence by an additional one year.  *Id.* at 69.  Petitioner also

12  acknowledged that his plea: (1) included a "serious felony" which could be used to increase any

13  future state prison sentence; (2) included a "strike" pursuant to California's Three Strikes Law;

14  and (3) constituted a "violent felony," which required that he serve at least 85% of his total state

15  prison sentence and limited his pre-sentence conduct credits.  *Id.*  Petitioner acknowledged that he

16  had discussed the negotiated plea with his attorney, that his attorney had answered all of his

17  questions, that he and his attorney had discussed possible defenses and motions, and that he was

18  convinced it was in his best interests to enter the plea.  *Id.* at 71.

19      Petitioner also waived his rights to a speedy trial and to a trial by jury, the right to

20  confront his accusers, the right to offer evidence on his behalf at a trial, and his right against self-

21  incrimination.  *Id.* at 70.  Petitioner agreed that no promises had been made to him to induce him

22  to enter his plea and that he was entering the plea voluntarily and of his own free will.  *Id.* at 71.

23  Petitioner also had notice of the nature of the charges against him, *id.* at 141-42.  *See Lonberger*,

24  459 U.S. at 436 (in order for a plea to be voluntary, an accused must receive notice of the nature

25  of the charge against him, "the first and most universally recognized requirement of due process")

26  (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  Also contained in the waiver form is trial

27  counsel's declaration that she had read and explained the waiver of rights

28  /////

form to petitioner and that she consented to the entry of the plea and concurred in petitioner's decision to plead nolo contendere.  CT at 72.

In open court during the change of plea hearing, petitioner informed the trial judge that he had signed and initialed the waiver of rights form, that he had "read and fully understood what was written" in each of the paragraphs that he initialed, that all of his questions had been answered by his attorney, that he understood the offense and allegation that he was admitting, that he had discussed "any potential defenses you may have had" to the charges against him, that he was pleading nolo contendere "freely and voluntarily," and that he understood the rights he was giving up.  Resp't's Lodg. Doc. 2, Reporter's Transcript on Appeal (hereinafter RT), at 1-2.  Petitioner also acknowledged that he was pleading no contest to spousal battery and was admitting a sentence enhancement for the infliction of great bodily injury, and that his sentence would be seven years in state prison.  *Id.* at 2.  Petitioner stated that he understood he was pleading no contest to a "serious or violent offense which restricts your credits."  *Id.*  He agreed that no other promises or threats had been made to induce him to enter the plea.  *Id.*

When the trial judge asked petitioner whether he was "currently thinking clearly about the pleas and consequences," petitioner answered, "Honestly, no."  *Id.*  At that point, the following colloquy occurred:

> THE COURT:  Why not?
>
> THE DEFENDANT:  Because I don't honestly think that –
>
> (Discussion held off the record)
>
> THE COURT:  The question is different than my next question. Let me ask my second question first.  I'm going to go back to the first one and tell you the difference.  The second question that I usually ask about this is whether you have been sick, injured, taking any medications or under the influence of anything that might be right now interfering with your judgment.
>
> THE DEFENDANT:  Oh, no.
>
> THE COURT:  The other question is one I asked you previously, which was whether you believe you are thinking clearly.  That can include thinking that might be sticking in your brain, okay, in your mind, as something that's interfering or making you think that I'm not doing this of my own free will or I'm not doing this with a full understanding of what I'm doing.  Okay?  Sort of a catch-all.

1     And if you believe that you don't know what you're doing or you
    don't fully understand the consequences, this is the time to tell me.

2     Once you say I don't have a problem here, and I sentence you, or
    you are pending sentencing and you want to come in and say, hey,

3     something else was happening, it's a much harder uphill climb for
    you to get back to a place where you have another trial entitlement.

4

    And that's what I'm asking you.  Is there anything else interfering

5     with your judgment today?

6     THE DEFENDANT:  No.

7     THE COURT:  Are you sure?

8     THE DEFENDANT:  Besides my own thoughts, no.

9     THE COURT:  Now, this is not to say that, you know, you disagree
    with some of the facts, you don't like the charges, those other sorts

10     of things.  It's a little bit different than that.  Okay?

11     There's also disagreements as to what the facts are.  The fact of the
    matter is your exposure is considerably more.  Sometimes people

12     will make pleas because they think this is the best deal they can get
    and they want to avoid a harsher circumstance or a harsher

13     punishment.  That could happen.  I'm not saying it will, but could
    happen if you went to trial.  And if that's your situation, that's fine.

14     Okay?  Does that kind of summarize your situation?

15     THE DEFENDANT:  Yes.

16     THE COURT:  But with that in mind, you believe that this is in
    your best interests right now, is that true?

17

    THE DEFENDANT:  Yes.

18

19 *Id.* at 3-4.[7]  The court then obtained and accepted petitioner's plea of no contest.  *Id.* at 4-6.

20       There is nothing in the record before this court to overcome the presumption that

21 petitioner pled guilty voluntarily and intelligently.  Petitioner's claim that he was unaware of "the

22 impact of a strike conviction in the future" and that he was confused about the amount of time he

23 would serve is belied by the record.  Petitioner informed the court in writing and orally that he

24 understood his punishment and the consequences of his plea.  The waiver of rights form, which

25             _____

26       [7]  Petitioner informs this court that the "discussion held OFF THE RECORD was the
judge basically convincing Petitioner that the deal was the best he could hope for, that he had

27 already waived his rights, that his attorney was a professional and she knew what she was doing,
etc."  ECF No. 18 at 6.  Petitioner also states that the judge's remarks "connived and coerced

28 Petitioner" into agreeing that he wished to proceed with the plea.  *Id.* at 6-7.

1   petitioner initialed and signed, fully informed him about these matters.  Specifically, petitioner

2   was informed and acknowledged that his plea: (1) included a "serious felony" which could be

3   used to increase any future state prison sentence; (2) included a "strike" pursuant to California's

4   Three Strikes Law; and (3) constituted a "violent felony," which required that he serve at least

5   85% of his total state prison sentence and limited his pre-sentence conduct credits.

6        At the *Marsden* hearing, petitioner told the judge that he "didn't read fully everything I

7   signed" and that he "read a few things, but I didn't read all of them."  Resp't's Lodg. Doc. 3 at

8   10.  This vague excuse is not sufficient to overcome the strong presumption that petitioner's

9   guilty plea was intelligent and voluntary.  Petitioner also told the judge at the *Marsden* hearing

10  that his own calculations led him to believe that he would only have to serve 4 years in prison,

11  after his time credits were calculated.  *Id.* at 11.  However, his trial counsel explained that she

12  thoroughly discussed petitioner's time credits with him and how those credits would affect his

13  sentence, and estimated that petitioner would probably "end up doing about five years" in prison.

14  *Id.* at 14-15.  Counsel's estimate was not a gross understatement of the time petitioner will

15  eventually have to serve.

16       Although petitioner states he believed he had a defense to the charges based on the

17  victim's pre-existing seizure disorder, he was aware of that defense prior to his guilty plea.  He

18  also discussed the victim's seizure disorder with his trial counsel, including the possibility that

19  petitioner's actions could have brought about the seizure.  Knowing all of this, petitioner chose to

20  plead guilty anyway, believing it was in his best interests to do so.

21       Although petitioner expressed some hesitation about pleading guilty, he ultimately

22  informed the trial court that he believed a guilty plea was in his best interests, that he understood

23  what he was pleading to, and that he was aware of the consequences of his plea.  Petitioner also

24  acknowledged that he faced a potential of a life sentence if chose not to plead guilty and was

25  convicted after a trial.  *Id.* at 13.  After a careful review of the record, this court does not find that

26  the trial judge "coerced" petitioner to enter his plea.  This court agrees with the trial court that

27  petitioner understood the ramifications of his plea but later experienced "buyer's remorse."

28  Petitioner has failed to overcome the strong presumption that his guilty plea is valid and that his

1    representations on the waiver form and in open court are true.  Accordingly, he is not entitled to

2    relief on his claim that the trial court violated his federal constitutional rights in denying his

3    request to set aside his plea.

4          As noted by respondent, petitioner does not challenge the trial court's denial of his

5    *Marsden* motion in the petition before this court – his claim is directed only to the trial court's

6    denial of his "motion" to withdraw his plea.  However, assuming *arguendo* that petitioner is

7    challenging the trial court's failure to appoint substitute counsel, any such claim should be

8    denied.

9          Pursuant to the decision in *People v. Marsden*, 2 Cal. 3rd 118 (1970), when a criminal

10   defendant in California asserting inadequate representation seeks to discharge appointed counsel

11   and substitute another attorney, the trial court must permit him to explain the basis of his

12   contention and to relate specific instances of the attorney's inadequate performance.  The denial

13   of a *Marsden* motion to substitute counsel can implicate a criminal defendant's Sixth Amendment

14   right to counsel and is properly considered in federal habeas corpus.  *Bland v. California Dep't of*

15   *Corrections*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds* by *Schell v. Witek*,

16   218 F.3d 1017 (9th Cir. 2000) (en banc).  On federal habeas review, the relevant inquiry is

17   whether the state trial court's disposition of the *Marsden* motion violated petitioner's right to

18   counsel because the asserted conflict "had become so great that it resulted in a total lack of

19   communication or other significant impediment that resulted in turn in an attorney-client

20   relationship that fell short of that required by the Sixth Amendment."  *Schell*, 218 F.3d at 1027-

21   28.  The Ninth Circuit has also explained:

22              [T]he basic question is simply whether the conflict between Schell
                and his attorney prevented effective assistance of counsel . . . .  It
23              may be the case, for example, that because the conflict . . . arose
                over decisions that are committed to the judgment of the attorney
24              and not the client, in fact he actually received what the Sixth
                Amendment required in the case of an indigent defendant ....
25

26   *Id.* at 1026.  The Sixth Amendment guarantees effective assistance of counsel, but not a

27   "meaningful relationship" between an accused and his counsel.  *Morris v. Slappy*, 461 U.S. 1, 14

28   (1983).

1    The United States Supreme Court has not specifically addressed the level of inquiry

2  required when a *Marsden* motion or other similar motion is made by a criminal defendant. When

3  assessing a trial court's ruling on a *Marsden* motion in the context of a federal habeas corpus

4  proceeding, the Ninth Circuit has held that the Sixth Amendment requires only "an appropriate

5  inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the

6  case goes forward." *Schell*, 218 F.3d at 1025. *See also Plumlee v. Masto*, 512 F.3d 1204, 1211

7  (9th Cir. 2008) ("Under our precedents, *see, e.g., Schell*, 218 F.3d at 1025-26, Judge Lane had a

8  duty to inquire into the problems with counsel when they were first raised, and he did so").

9    Here, the trial court held a *Marsden* hearing, inquired into counsel's representation and

10  petitioner's complaints, and satisfied itself that the representation was adequate. The trial judge

11  gave petitioner a full opportunity to explain his reasons for wanting to substitute another attorney

12  so that he could file a motion to withdraw his guilty plea. This procedure complied with the Sixth

13  Amendment. *See Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007) (inquiry was adequate

14  when court determined that the lines of communication were open and counsel was competent);

15  *United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (inquiry was adequate where

16  defendant 'was given the opportunity to express whatever concerns he had, and the court inquired

17  as to [defense attorney's] commitment to the case and his perspective on the degree of

18  communication."); *cf. Schell*, 218 F.3d at 1027 (remanding for an evidentiary hearing where the

19  state court failed to make any inquiry into alleged deterioration of attorney-client relationship and

20  the substance of the petitioner's claims).

21    This court has reviewed the transcript of petitioner's *Marsden* hearing and does not find

22  that a conflict between petitioner and his trial counsel had become so great that it resulted in a

23  constructive denial of petitioner's Sixth Amendment right to counsel. *Schell*, 218 F.3d at 1027-

24  28. As explained below, this court also concludes that petitioner's trial counsel did not render

25  ineffective assistance in connection with the entry of petitioner's plea. As explained above,

26  petitioner's plea of nolo contendere was not involuntary and was validly entered. Under the

27  circumstances of this case, the trial court was not unreasonable in concluding that petitioner's trial

28  counsel was providing competent representation. The decision of the California Court of Appeal

1  to the same effect does not violate established United States Supreme Court authority.

2  Accordingly, petitioner is not entitled to relief on a *Marsden* claim.

3        **B.  Ineffective Assistance of Counsel**

4             **1.  <u>Trial Counsel</u>**

5        In petitioner's next ground for relief, he claims that his trial counsel rendered ineffective

6  assistance in failing to "defend, to properly inform him of the consequences of his plea and to

7  assist him withdraw his plea when he objected."  ECF No. 1 at 5.  Petitioner first argues that he

8  was "under the impression" that he would only serve five years in prison, but "the change of plea

9  form had seven (7) years scratched out and nine (9) years for the maximum period of

10  incarceration."  *Id.*  He explains that "this was not the understanding that Petitioner had."  *Id.*

11        Petitioner also makes the following allegations:

12
13
14
15
16
17
18
19
20
> There was a discussion "off the record" with the judge and the one
> reason why Petitioner wanted a new counsel because he thought he
> should be defended against the fact that the victim had suffered a
> contributory seizure and this should mitigate the crime, that he did
> not know he would be entering a plea for more time than he thought
> he was getting, that it was a serious felony "strike" and that he
> would be limited to 85% credit earning while he was in prison. (See
> Exhibit A, p. 2.)  Therefore, Petitioner did not understand why the
> charges were so serious, why he was getting punished for a serious
> GBI felony when he should have had a defense to the GBI offered,
> and why he wasn't getting the five (5) years as his lawyer told him.
> (See  R.T., Marsden, pp. 10-11; Exhibit F.)    Petitioner also
> complained about the fact that he was not guilty of the GBI and he
> believed that he should have had new counsel assigned for the
> failure to set forth a defense – even at sentencing – to this
> allegation. (Exhibit F, pp. 12-13.)

21  *Id.*

22        In the traverse, petitioner argues that his trial counsel rendered ineffective assistance in:

23  (1) failing to conduct a medical investigation into the victim's seizure disorder "and whether

24  these seizures were a contributing factor resulting in her injuries, rather than blaming it all on

25  Petitioner;" and (2) failing to properly advise petitioner of the consequences of his plea.  ECF No.

26  18 at 11.  Petitioner explains that he believed he was not guilty of inflicting great bodily injury on

27  the victim, on the theory that the victim's pre-existing seizure disorder, and not his actions,

28  caused her injuries.  *Id.*  He believes his trial counsel should have investigated this theory.  He

1   states that "counsel never conducted a medical investigation to determine whether Petitioner

2   caused the seizure, whether his actions were contributory, or whether he was actually innocent of

3   the GBI enhancement, which was the major bone of contention with Petitioner." *Id.* at 13.

4   However, petitioner concedes that he "discussed the victim's seizure disorder with his counsel."

5   *Id.* at 12.  Petitioner summarizes his claim as follows:

> Counsel was ineffective at trial, ineffective at the *Marsden*, and
> ineffective at assisting Petitioner pull his plea.  Petitioner's guilty
> plea was not correctly defended by counsel and he was not fully
> informed of the consequences of such a plea.  Moreover, the trial
> court ignored Petitioner's reluctance to agree to these terms and
> conditions and instead coerced Petitioner into relinquishing his
> fundamental rights.

10   *Id.* at 13.

11   "When a criminal defendant has solemnly admitted in open court that he is in fact guilty

12   of the offense with which he is charged, he may not thereafter raise independent claims relating to

13   the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Moran*

14   *v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994), *superseded on other grounds by statute*, AEDPA,

15   Pub.L. No. 104–132, 110 Stat. 1214, as stated in *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th

16   Cir. 2008).  Thus, "the only challenges left open in federal habeas corpus after a guilty plea is the

17   voluntary and intelligent character of the plea and the nature of the advice of counsel to plead."

18   *Givens v. Sisto*, No. C 08-05231 JW (PR), 2010 WL 1875766 (N.D. Cal. May 7, 2010) (citations

19   omitted).  Any ineffective assistance claims relating to other, earlier actions by his counsel are

20   barred by the holding in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973.)  Petitioner's allegation

21   that his trial counsel rendered ineffective assistance in failing to fully investigate a defense that he

22   did not inflict great bodily injury on the victim because her injuries were the result of her pre-

23   existing seizure disorder involves conduct by counsel that occurred prior to the entry of

24   petitioner's plea of guilty.  Accordingly, that claim has been waived by the terms of petitioner's

25   plea agreement.  *Tollett*, 411 U.S. at 267.

26   Petitioner's claim that his trial counsel rendered ineffective assistance in connection with

27   her advice related to the entry of his guilty plea also lacks merit and should be denied.  The

28   applicable legal standards for a claim of ineffective assistance of counsel are set forth in

1    *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

2    must show that (1) his counsel's performance was deficient and that (2) the "deficient

3    performance prejudiced the defense." *Id.* at 687.  Counsel is constitutionally deficient if his or

4    her representation "fell below an objective standard of reasonableness" such that it was outside

5    "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal

6    quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

7    fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 114 (quoting *Strickland*, 466 U.S.

8    at 687).  Prejudice is found where "there is a reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

10    U.S. at 694.

11        The *Strickland* standards apply to claims of ineffective assistance of counsel involving

12    counsel's advice offered during the plea bargain process.  *Missouri v. Frye*, ___ U.S. ___, 132

13    S.Ct. 1399 (2012); *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012); *Padilla v. Kentucky*,

14    559 U.S. ___, 130 S.Ct. 1473 (2009); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Nunes v. Mueller*,

15    350 F.3d 1045, 1052 (9th Cir. 2003).  "During plea negotiations defendants are 'entitled to the

16    effective assistance of competent counsel.'" *Lafler*, 132 S.Ct. at 1384 (quoting *McMann v.*

17    *Richardson*, 397 U.S. 759, 771 (1970).  "A defendant has the right to make a reasonably informed

18    decision whether to accept a plea offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002)

19    (citations omitted).  Trial counsel must give the defendant sufficient information regarding a plea

20    offer to enable him to make an intelligent decision. *Id.* at 881.  "[W]here the issue is whether to

21    advise the client to plead or not 'the attorney has the duty to advise the defendant of the available

22    options and possible consequences' and failure to do so constitutes ineffective assistance of

23    counsel." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting *Beckham v.*

24    *Wainwright*, 639 F.2d 262, 267 (5th Cir.1981)).

25        A mere inaccurate prediction of a sentence, standing alone, does not constitute ineffective

26    assistance of counsel.  *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).  Only "the gross

27    mischaracterization of the likely outcome . . . , combined with the erroneous advice on the

28    possible effects of going to trial, falls below the level of competence required of defense

1  attorneys." *Id.* at 865 (citations omitted).  Counsel is not "required to accurately predict what the

2  jury or court might find." *Turner*, 281 F.3d at 881.  *See also McMann*, 397 U.S. at 771

3  ("uncertainty is inherent in predicting court decisions.").  Nor is counsel required to "discuss in

4  detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the]

5  case," or "strongly recommend" the acceptance or rejection of a plea offer.  *Turner*, 281 F.3d at

6  881.  Although counsel must fully advise the defendant of his options, he is not "constitutionally

7  defective because he lacked a crystal ball." *Id.*  The relevant question is not whether "counsel's

8  advice [was] right or wrong, but . . . whether that advice was within the range of competence

9  demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771.

10      In order to show prejudice in the context of plea offers, "a defendant must show the

11  outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct.

12  at 1384.  In order to demonstrate prejudice where a defendant claims that trial counsel's defective

13  advice caused him to accept a plea offer instead of proceeding to trial, a defendant must

14  demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded

15  guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

16      Petitioner has failed to demonstrate either deficient performance or prejudice with regard

17  to his claims that his trial counsel rendered ineffective assistance in connection with the plea

18  bargain process.  Petitioner's claim that his trial counsel failed to inform him about "the

19  consequences of his plea" is belied by the record.  As explained above, petitioner was fully

20  advised of the consequences of his plea, including the impact of a "strike" conviction and what

21  his final sentence would be.  Petitioner was advised that he would receive a stipulated sentence of

22  7 years, which would be reduced by his time credits, which would in turn be limited by the terms

23  of his plea.  Petitioner and his trial counsel also discussed the victim's seizure disorder and the

24  impact of that disorder on the likelihood that petitioner would be found guilty of inflicting great

25  bodily injury.  With regard to the sentence petitioner received, the court notes that petitioner did

26  not receive a sentence of 9 years in prison, regardless of what figure was penciled in on the

27  waiver form.  Rather, he received a sentence of 7 years in prison, minus applicable credits, as he

28  was informed he would.  His trial counsel's estimate that he would ultimately serve

1   approximately 5 years in prison was not wide of the mark.  It was certainly not a "gross

2   mischaracterization of the likely outcome."  In any event, as noted above, trial counsel was not

3   required to "have a crystal ball."  In short, trial counsel's advice to petitioner with respect to the

4   plea offer and whether to accept it was within the range of competence demanded of attorneys in

5   criminal cases.  Accordingly, petitioner is not entitled to relief on his claim of ineffective

6   assistance of trial counsel.[8]

7                    **2.  <u>Appellate Counsel</u>**

8         In his next ground for relief, petitioner claims that his appellate counsel rendered

9   ineffective assistance in failing to raise a claim of ineffective assistance of trial counsel in

10  connection with his guilty plea, and in failing to "properly exhaust" petitioner's claim of

11  ineffective assistance of trial counsel by filing a petition for review in the California Supreme

12  Court.  ECF No. 1 at 6.  In the traverse, petitioner describes his claim as follows: "Petitioner

13  asserts that appellate counsel was ineffective in presenting claims on appeal, was ineffective

14  concerning the *Marsden*, and ineffective as assisting Petitioner raise his issues for exhaustion."

15  ECF No. 18 at 17.

16        The *Strickland* standards apply to appellate counsel as well as trial counsel.  *Smith v.*

17  *Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

18  However, an indigent defendant "does not have a constitutional right to compel appointed counsel

19  to press nonfrivolous points requested by the client, if counsel, as a matter of professional

20  judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

21  Counsel "must be allowed to decide what issues are to be pressed."  *Id.*  Otherwise, the ability of

22  _____

23        [8]   In the traverse, petitioner alleges that his trial counsel rendered ineffective assistance at
     the "sentencing phase" in failing to "present any mitigating evidence in support of defendant" and
24  in failing to "challenge the strikes at sentencing."  ECF No. 18 at 15.  To the extent petitioner is
     attempting to belatedly raise new claims in the traverse, relief should be denied.  *See Cacoperdo*
25  *v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise
     additional grounds for relief); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir.
26  1994) ("we review only issues which are argued specifically and distinctly in a party's opening
     brief").  Even if these claims had been properly raised, there is no evidence before the court that
27  either of these actions by counsel would have resulted in a reduced sentence in this case.
     Accordingly, petitioner has failed to demonstrate prejudice with respect to either claim.
28

                                    22

counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id.  See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.").  There is, of course, no obligation to raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  *Id.* at 1434 n.9.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").  This is because "[a] brief that raises every colorable issue runs the risk of burying good arguments - those that, in the words of the great advocate John W. Davis, 'go for the jugular.'"  *Barnes*, 463 U.S. at 751-52.

Here, appellate counsel's decision to press claims with arguably more merit than the ineffective assistance of trial counsel claims now suggested by petitioner was well "within the range of competence demanded of attorneys in criminal cases."  *McMann*, 397 U.S. at 771.  Nor is petitioner entitled to habeas relief on his claim that his appellate counsel rendered ineffective assistance in failing to file a petition for review.  Prisoners do not have a constitutional right to counsel when pursuing collateral attacks upon their convictions, nor do they have this right when pursuing a discretionary appeal on direct review of a conviction.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  "[T]he right to appointed counsel extends to the first appeal of right, and no further."  *Id.  See also Murray v. Giarratano*, 492 U.S. 1, 7 (1989) (federal constitution does not require states to appoint counsel for death row inmates seeking state post-conviction relief); *Ross v. Moffitt*, 417 U.S. 600, 616 (1974) (indigent defendants do not have a constitutional right

1   to appointed counsel for discretionary appeals).  Because there is no right to counsel for

2   discretionary review, appellate counsel's failure to file a petition for review in the California

3   Supreme Court cannot constitute deficient performance.[9]  *Id.*

4   **IV. Conclusion**

5        For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

6   application for a writ of habeas corpus be denied.

7        These findings and recommendations are submitted to the United States District Judge

8   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9   after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12   shall be served and filed within fourteen days after service of the objections.  Failure to file

13   objections within the specified time may waive the right to appeal the District Court's order.

14   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

15   1991).  In his objections petitioner may address whether a certificate of appealability should issue

16   in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

17   2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

18   final order adverse to the applicant).

19   DATED:  December 20, 2016.

20                                        EDMUND F. BRENNAN
                                         UNITED STATES MAGISTRATE JUDGE

---

26       [9]  Even if he were entitled to counsel on discretionary review, petitioner has failed to

27   demonstrate that he would probably have prevailed if his appellate counsel had pursued claims of
     ineffective assistance of trial counsel or had filed a petition for review.  Accordingly, he has

28   failed to establish prejudice with respect to these claims.